[Cite as *State v. Buck*, 2017-Ohio-273.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.     27597 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ROXANNE BUCK | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.     CR 2014 03 0842 |

DECISION AND JOURNAL ENTRY

Dated: January 25, 2017

---

SCHAFER, Judge.

**{¶1}** Defendant-Appellant, Roxanne Buck, appeals the judgment of the Summit County Court of Common Pleas convicting her of murder and tampering with evidence. For the reasons set forth below, we affirm.

I.

**{¶2}** On Saturday, March 15, 2014, law enforcement discovered the slain body of 21-year-old Michelle Johnson hidden in a shed behind her home in Stow, Ohio. The Summit County Grand Jury subsequently indicted Buck, Michelle Johnson's roommate, on one count of murder in violation of R.C. 2903.02(A), a special felony, and one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree. Buck pleaded not guilty to the charges and the matter proceeded to a jury trial.

**{¶3}** At the conclusion of the State's case-in-chief, Buck made a Crim.R. 29 motion for judgment of acquittal, which the trial court denied. The jury ultimately found Buck guilty of

both counts contained in the indictment. The trial court sentenced Buck to 18 years to life in prison.

{¶4} Buck filed this timely appeal, raising eight assignments of error for this Court's review.

II.

**Assignment of Error I**

**Buck's constitutional right to a speedy trial was violated when the trial date was unreasonably continued outside the statutory timeframe. Accordingly, the counts against her must be dismissed.**

{¶5} In her first assignment of error, Buck argues that the trial court erred by denying her motion to dismiss the charges against her. Specifically, Buck contends that her right to a speedy trial was violated since it took the State nearly seven months to bring her to trial. We disagree.

{¶6} A trial court's determination of speedy trial issues presents a mixed question of law and fact. *State v. Fields*, 9th Dist. Wayne No. 12CA0045, 2013–Ohio–4970, ¶ 8. "When reviewing an appellant's claim that he was denied his right to a speedy trial, this Court applies the de novo standard of review to questions of law and the clearly erroneous standard of review to questions of fact." *Id.*, quoting *State v. Downing*, 9th Dist. Summit No. 22012, 2004–Ohio–5952, ¶ 36.

{¶7} "The right of an accused to a speedy trial is recognized by the Constitutions of both the United States and the State of Ohio." *State v. Pachay*, 64 Ohio St.2d 218, 219 (1980). "The statutory speedy trial provisions, R.C. 2945.71 et seq., constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor * * *." *Id.* at syllabus. Accordingly, "for purposes of bringing an

accused to trial, the statutory speedy trial provisions of R.C. 2945.71 *et seq.* and the constitutional guarantees found in the United States and Ohio Constitutions are coextensive." *State v. O'Brien*, 34 Ohio St.3d 7, 9 (1987).

{¶8} R.C. 2945.71(C)(2) provides that "[a] person against whom a charge of felony is pending ... [s]hall be brought to trial within two hundred seventy days after the person's arrest." "[E]ach day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). Thus, if the accused is held in jail in lieu of bail, the time within which the trial must be held is 90 days. *See id*. When calculating speedy trial time, the day of arrest is not to be counted. *State v. Friedhof*, 9th Dist. Medina No. 2505-M, 1996 WL 385612, *3 (July 10, 1996), citing *State v. Steiner*, 71 Ohio App.3d 249, 250-251 (9th Dist.1991); *See also* Crim.R. 45(A). "Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by [R.C. 2945.71]." R.C. 2945.73(B).

{¶9} Additionally, an accused may waive his rights to a speedy trial, so long as the waiver is knowingly and voluntarily made. *O'Brien* at 9. Such a waiver must be in writing or expressly made in open court on the record. *State v. King*, 70 Ohio St.3d 158 (1994), at syllabus. Furthermore, a waiver may be limited or unlimited in duration. *State v. Bray*, 9th Dist. Lorain No. 03CA008241, 2004-Ohio-1067, ¶ 8, citing *O'Brien* at paragraph two of the syllabus.

{¶10} In the present case, Buck was arrested on March 20, 2014. As such, the speedy trial clock began to run in this matter on March 21, 2014. It is undisputed that Buck remained incarcerated until trial. On July 3, 2014, Buck voluntarily waived her right to have her case tried within the time period provided for in R.C. 2945.71 et seq., and consented to a continuance of her case until September 15, 2014. On August 22, 2014, the State moved to continue the trial

date due to the unavailability of a material witness. On August 28, 2014, Buck revoked her time waiver and demanded a speedy trial. The trial court granted the State's motion for continuance over defense counsel's objection and rescheduled the trial date for October 6, 2014. On the morning of trial, defense counsel filed a motion to dismiss for lack of a speedy trial, which the trial court denied.

{¶11} After reviewing the record, we determine that Buck's speedy trial argument is without merit. Although Buck did sign a limited speedy trial waiver in which she made handwritten revisions limiting the continuance until September 15, 2014, Buck did not reference a starting point for the waiver. "When a waiver fails to include a specific date as the starting point for the tolling of time, the waiver is deemed to be effective from the date of arrest." *State v. Matland*, 7th Dist. Mahoning No. 09-MA-115, 2010-Ohio-6585, ¶ 47, citing *Bray* at ¶ 8-9. Thus, Buck's waiver constitutes "a waiver of all time preceding the execution of the waiver and until the date of the continuance," which here would be from her arrest until September 15, 2014. *State v. Baugh*, 9th Dist. Lorain No. 95CA006124, 1996 WL 37726, *2 (Jan. 31, 1996). As such, the statutory speedy trial time did not begin to run against the State until September 16, 2014. Buck was brought to trial on October 6, 2014, less than one month later. Accordingly, we conclude that the trial court did not err by denying Buck's motion to dismiss for lack of a speedy trial.

{¶12} Buck's first assignment of error is overruled.

### Assignment of Error II

**Buck did not knowingly, intelligently and voluntarily waive her right to a speedy trial.**

{¶13} In her second assignment of error, Buck argues that she did not knowingly, intelligently, and voluntarily waive her right to a speedy trial. We disagree.

{¶14} A criminal defendant may waive his right to a speedy trial if it is knowingly, voluntarily and intelligently made. *State v. Adams*, 43 Ohio St.3d 67, 69, (1989). The waiver must also be expressed in writing or made in open court on the record. *King*, 70 Ohio St.3d at syllabus.

{¶15} Here, Buck signed a time waiver on July 3, 2014, which expressly stated that she was knowingly and voluntarily waiving her right to have her case tried within the time period provided for in R.C. 2945.71 and consented to have her case continued until September 15, 2014. Buck argues on appeal that her waiver was not knowingly, intelligently, and voluntarily given as she was unaware that the waiver related back to the date of her arrest instead of the date that she signed the waiver. However, because the transcript of the pretrial proceeding where Buck waived her speedy trial rights on the record has not been filed with this Court, we must presume regularity and the validity of the time waiver. *See N. Olmstead v. Rock*, 8th Dist. Cuyahoga No. 99333, 2013-Ohio-3152, ¶ 21.

{¶16} Buck's second assignment of error is overruled.

### Assignment of Error III

**Buck's constitutional rights were violated as she received ineffective assistance of counsel during the trial court proceedings and from her original appellate counsel.**

{¶17} In her third assignment of error, Buck argues that she received ineffective assistance of counsel from both trial and appellate counsel. Specifically, Buck contends that trial counsel was ineffective by failing to advise her that the speedy trial time waiver related back to the date of arrest, March 20, 2014, instead of July 3, 2014, when she signed the waiver. With

regard to appellate counsel, Buck argues that her first appellate lawyer[1] was ineffective by failing to ensure that the transcript of the pretrial proceeding where Buck waived her right to a speedy trial was included in the appellate record. We disagree with both of Buck's arguments.

{¶18} "On the issue of counsel's ineffectiveness, [Buck, as the Appellant,] has the burden of proof because in Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006–Ohio–6679, ¶ 62. To prove ineffective assistance of counsel, Buck must establish that (1) her counsel's performance was deficient, and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate prejudice, an appellant must prove that "there exists a reasonable probability that, were it not for counsel's [deficient performance], the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus. The same standard applies to an ineffective assistance claim made against appellate counsel. *State v. Rojas*, 64 Ohio St.3d 131, 141 (1992). This Court need not address both prongs of *Strickland* if an appellant fails to prove either one. *State v. Ray*, 9th Dist. Summit No. 22459, 2005–Ohio–4941, ¶ 10.

{¶19} With regard to Buck's ineffective assistance of trial counsel argument, we reiterate that since the transcript of the pretrial proceeding where Buck waived her right to a speedy trial was not included in the appellate record, this Court must presume regularity in the

---

[1] Buck's initial appellate counsel filed the notice of appeal on November 25, 2014. The record was filed with this Court on March 9, 2015. On April 1, 2015, Buck's appellate counsel provided notice that he was taking a 20-day extension to file the merit brief. However, prior to filing the merit brief, Buck's appellate counsel filed a motion to withdraw, which this Court ultimately granted. *See State v. Buck*, 9th Dist. Summit No. 27597 (Aug. 26, 2015). On September 22, 2015, Buck's second appellate counsel filed a notice of appearance along with a motion for an extension of time to file a merit brief, which this Court granted. Buck's new appellate counsel filed the merit brief on November 2, 2015, wherein she raises an ineffective assistance of appellate counsel argument as it pertains to Buck's initial appellate counsel.

trial court's proceedings. *See State v. Jackson*, 9th Dist. Lorain No. 95CA006152, 1995 WL 734029, *2 (Dec. 13, 1995) (presuming regularity in the trial court's proceedings and overruling appellant's ineffective assistance of trial counsel argument where appellant did not provide this Court with a transcript of the hearing on his motion for post-conviction relief), citing *Wozniak v. Wozniak*, 90 Ohio App.3d 400, 409 (9th Dist.1993). With regard to Buck's ineffective assistance of appellate counsel argument, we note that App.R. 26(B) is the appropriate remedy for asserting a claim for ineffective assistance of appellate counsel. *State ex rel. Collins v. Saffold*, 8th Dist. Cuyahoga No. 97494, 2012-Ohio-278, ¶ 6.

**{¶20}** Accordingly, Buck's third assignment of error is overruled to the extent that we presume regularity in the trial court proceedings and this Court cannot address her ineffective assistance of appellate counsel argument at this juncture.

### Assignment of Error IV

**Buck's constitutional right to due process was violated and the trial court committed reversible error when the prosecutor admitted evidence that's probative value was substantially outweighed by the prejudicial impact.**

**{¶21}** In her fourth assignment of error, Buck contends that the trial court erred by denying her motion for a mistrial following the State's presentation of a "gruesome and repetitive" PowerPoint presentation containing photographs of the victim's autopsy. We disagree.

**{¶22}** "'Under Evid.R. 403 * * *, the admission of photographs is left to the sound discretion of the trial court.'" *State v. Maurer,* 15 Ohio St.3d 239, 264 (1984). Likewise, a trial court's ruling on a motion for mistrial will not be reversed absent an abuse of discretion. *State v. Witcher*, 9th Dist. Summit No. 26111, 2012-Ohio-4141, ¶ 32. "A trial court may reject a photograph, otherwise admissible, due to its inflammatory nature, if the prejudicial effect

outweighs its probative value." *Maurer* at 264-265; Evid.R. 403. "However, the mere fact that a photograph is gruesome or horrendous is not sufficient to render it *per se* inadmissible." *Id*. at 265, quoting *State v. Woodards*, 6 Ohio St.2d 14, 25 (1966). "Autopsy photographs are generally admissible to help the jury appreciate the nature of the crimes, to illustrate the coroner's or other witnesses' testimony by portraying the wounds, to help prove the defendant's intent, and to show the lack of accident or mistake." *State v. Costell*, 3d Dist. Union No. 14-15-11, 2016-Ohio-3386, ¶ 142, citing *State v. Shakoor*, 7th Dist. Mahoning No. 01CA121, 2003–Ohio–5140, ¶ 73, citing *State v. Gross*, 97 Ohio St.3d 121, 2002–Ohio–5524, ¶ 52.

{¶23} Here, we conclude that the trial court did not abuse its discretion by denying Buck's motion for a mistrial. Although some of the photographs in question are graphic, we determine that these photographs are more probative than prejudicial in at least three respects. First, the images aided the chief medical examiner during her testimony and allowed the jury to better understand the medical examiner's testimony. The chief medical examiner, who performed the autopsy of Michelle Johnson, testified that in preparation for her testimony, she created a PowerPoint presentation to help assist the jury while she discussed her findings, diagnoses, and opinions. The images in dispute were contained in this PowerPoint presentation and shown to the jury while the medical examiner simultaneously discussed each photograph. The medical examiner testified that after conducting the autopsy, her findings and diagnoses "were sharp force injury to the neck which included an incised and stab wound injury to the left jugular vein and anterior neck, which is the front of the neck." She further stated that there were also "multiple incised and stab wounds to the neck and multiple blunt and sharp * * * force injuries on other areas of the body, including the head, the torso, the arms and hands, and a hematoma or bruise of the scalp." The photographs within the PowerPoint presentation depicted

the victim's wounds, primarily to the neck, but also to the scalp, back, and hands. Secondly, the photographs helped prove the murderer's intent. *See State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, ¶ 99 (explaining that the trial court did not abuse its discretion by allowing the State to show "gruesome" autopsy slides where the slides illustrated the coroner's testimony and helped prove the killer's intent). The medical examiner testified that the victim sustained 32 stab and incised wounds, thus demonstrating that the victim was purposely killed. Lastly, the State explained that it showed the photographs, in part, to prove the identity of the killer, as the stab wounds to the victim could help explain why Buck had cuts on her hands in the immediate wake of the murder.

{¶24} For these reasons, we determine that the trial court did not err by denying Buck's motion for a mistrial. Our decision on this matter is further buttressed by the trial court's decision to review the PowerPoint during a brief break in the proceedings and delete a photograph on the last slide of the presentation. Lastly, we note that while the trial court allowed the PowerPoint presentation to be admitted into evidence, it did not allow the presentation to be given to the jury during their deliberations.

{¶25} For the foregoing reasons, Buck's fourth assignment of error is overruled.

**Assignment of Error V**

**The trial court erred in denying [Buck's] motion for a mistrial when the prosecutor made improper closing arguments.**

{¶26} In her fifth assignment of error, Buck argues that the trial court erred by denying her motion for a mistrial because the prosecutor made improper comments that rose to the level of prosecutorial misconduct. During the State's rebuttal argument, the prosecutor encouraged the jury to recognize that Buck's admission to the tampering with evidence charge was merely a

ploy to convince the jury that she was being truthful about not murdering her roommate. Buck contends that the prosecutor's remarks prejudicially affected her substantial rights. We disagree.

{¶27} This Court reviews a trial court's denial of a motion for mistrial for an abuse of discretion. *See State v. Halsell*, 9th Dist. Summit No. 24464, 2009–Ohio–4166, ¶ 6. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The prosecution is normally entitled to a certain amount of latitude during closing argument. *State v. Smith*, 14 Ohio St.3d 13, 13 (1984). "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *Id*. at 14. "If the prosecutor's comments were improper, 'it must be clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found the defendant guilty.'" *State v. Jones*, 9th Dist. Summit No. 24776, 2010–Ohio–351, ¶ 19, quoting *Smith* at 15. The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor." *State v. Lott*, 51 Ohio St.3d 160, 166 (1990), quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

{¶28} After reviewing the entire record, we determine that the prosecutor's comments did not warrant a mistrial. Defense counsel's sole basis for asking for a mistrial was "when you start arguing the levels of offense, * * * that's an improper argument[.]" When reviewing the record of the entire trial, however, we cannot say that the prosecutor's remarks denied Buck of a fair trial to the point that the jury would have acquitted her but for those remarks, especially given the copious amounts of evidence linking Buck to the murder of Michelle Johnson.

{¶29} Buck also argues that the prosecutor committed an act of misconduct by repeatedly referring to her testimony as a lie. However, Buck did not object on the basis at trial

and has failed to develop a plain error argument on appeal. Indeed, her appellate brief does not mention plain error. Due to this failure to raise a plain error argument, we decline to sua sponte fashion one and then address it. *See State v. McCrae*, 9th Dist. Summit No. 27387, 2015–Ohio–1803, ¶ 8; *see also* App.R. 16(A)(7).

**{¶30}** Buck's fifth assignment of error is overruled.

## Assignment of Error VI

**The trial court erred in denying [Buck's] motion in limine regarding the bottle of bleach and the BCI testing completed thereupon as the evidence was not provided to defense counsel in a timely manner and the eleventh hour disclosure violated Crim.R. 16(K).**

**{¶31}** In her sixth assignment of error, Buck argues that the trial court erred by denying her motion in limine on the basis that the State failed to comply with the requirements of Crim.R. 16(K) as it pertained to its intent to admit certain evidence at trial. Buck contends that she was prejudiced by the State's failure to timely inform her of its intent to admit both the bleach bottle and the scientific test results of the bleach bottle at trial. We disagree.

**{¶32}** Crim.R. 16 governs discovery during criminal proceedings. *State ex rel. Steckman v. Jackson*, 70 Ohio St. 3d 420, 428 (1994). Trial courts are given much latitude in supervising pretrial discovery. *State v. Edwards*, 49 Ohio St.2d 31, 42 (1976), vacated on other grounds, 438 U.S. 911 (1978). A trial court's supervisory decision will not be reversed on appeal absent an abuse of discretion. *State v. Parson*, 6 Ohio St.3d 442, 445 (1983).

**{¶33}** Crim.R. 16(K) provides:

**Expert Witnesses; Reports.** An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not

> prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

The purpose of Crim.R. 16(K) "'is to avoid unfair surprise by providing notice to the defense and allowing the defense an opportunity to challenge the expert's findings, analysis, or qualifications, possibly with the support of an adverse expert who could discredit the opinion after carefully reviewing the written report.'" *State v. Fetty*, 11th Dist. Portage No. 2011–P–0091, 2012–Ohio–6127, ¶ 36, quoting *State v. Perry*, 11th Dist. Lake No. 2011–L–125, 2012–Ohio–4888, ¶ 55. "Prosecutorial violations of Crim.R. 16 are reversible only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect." *State v. Proby*, 10th Dist. Franklin No. 14AP-1067, 2015-Ohio-3364, ¶ 34, quoting *State v. Joseph*, 73 Ohio St.3d 450, 458 (1995); *see also State v. Jackson*, 107 Ohio St.3d 53, 2005–Ohio–5981, ¶ 131.

{¶34} In the present case, Ohio Bureau of Criminal Investigation (BCI) agents discovered a bottle of bleach in the laundry room on the lower level of the Maplepark Road residence during their investigation immediately after the victim's body was discovered. The bleach bottle appeared to have a "suspected bloodstain" on it. However, the State did not submit the bleach bottle to BCI for testing until September 8, 2014, roughly one month before the start of trial. Upon receiving the bleach bottle, BCI took three swabs from suspected bloodstains on the bottle. BCI subsequently tested those swabs and determined that two of the swabs of suspected blood revealed no connection to Buck. Testing on the other swab, however, revealed that Buck could not be excluded as a contributor of the DNA from the suspected blood stain with a frequency of one in 3,880 unrelated individuals. BCI amended its DNA report to include this new information, which was then turned over to defense counsel roughly one week before the

start of trial. Defense counsel then made an oral motion in limine to exclude all evidence derived from the bleach bottle on the basis that the amended DNA report was not received within 21 days of trial. The trial court denied the motion. Defense counsel preserved his objection to the admission of evidence derived from the bleach bottle throughout the course of the trial.

{¶35} After reviewing the record, we conclude that Buck has failed to demonstrate that she was prejudiced by the State's tardy disclosure of the DNA analysis of the bleach bottle. As noted above, two of the swabs from the bleach bottle revealed no connection to Buck. Although one of the swabs did reveal that Buck could not be excluded as a contributor of the DNA on the bleach bottle with a frequency of one in 3,880 unrelated individuals, this pales in comparison to the other DNA evidence that was admitted at trial.

{¶36} For example, the same BCI forensic DNA analyst who tested the swabs taken from the bleach bottle and testified as to his findings and conclusions also testified that Buck could not be excluded as the source of the DNA from the swabs of suspected bloodstains taken from the washing machine, above the bathroom sink, and in the garage. This DNA analyst further testified that based on the national database provided by the FBI, the expected frequency of occurrence of the DNA profile from these swabs is one in 1,250,000,000,000,000,000 (one quintillion, two hundred and fifty quadrillion) unrelated individuals. The DNA analyst further testified that Buck could not be excluded as a contributor to the DNA from the swab taken from the victim's left hand fingernail clippings and the swab of a suspected bloodstain taken from the handle of a paint can that was found in the laundry room near the bottle of bleach. The analyst explained that based on the FBI's national database, the proportion of the population that cannot be excluded as possible contributors to the mixture of DNA profiles on the swabs from the left

hand fingernail clippings and the handle of the paint can is one in 751,300 unrelated individuals and one in 84,320,000 unrelated individuals, respectively.

**{¶37}** Based on the foregoing, we conclude that Buck has failed to show that she was prejudiced in light of the other overwhelming DNA evidence that was presented at trial. As such, we cannot conclude that the trial court erred by denying her motion in limine on the basis of a Crim.R. 16(K) violation.

**{¶38}** Buck's sixth assignment of error is overruled.

### Assignment of Error VII

**The prosecution presented insufficient evidence to support the jury's finding that the defendant was guilty upon count one – murder and the conviction was also against the manifest weight of the evidence.**

**{¶39}** In her seventh assignment of error, Buck contends that her murder conviction[2] was both supported by insufficient evidence and against the manifest weight of the evidence. We disagree.

**{¶40}** A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶41}** "Circumstantial evidence and direct evidence inherently possess the same probative value." *Id*. at paragraph one of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable

---

[2] Buck's seventh assignment of error does not contest her tampering with evidence conviction.

doubt." *Id.* at paragraph two of the syllabus. Although we conduct de novo review when considering a sufficiency of the evidence challenge, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775 , ¶ 33.

**{¶42}** At the outset, we note that although Buck's appellate brief asserts that her murder conviction is against the manifest weight of the evidence, she has failed to develop an argument on this point. *See* App.R. 16(A)(7). As such, we confine our analysis to Buck's sufficiency of the evidence argument.

**{¶43}** This matter implicates Buck's murder conviction under R.C. 2903.02(A), which prohibits a person from "purposely caus[ing] the death of another[.]" "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." Former R.C. 2901.22(A). Purpose may be proven by circumstantial evidence. *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist.1994), citing *State v. Nicely*, 39 Ohio St.3d 147 (1988).

**{¶44}** Here, 19 witnesses in total were called to testify on behalf of the State. Diane Johnson, the victim's mother, testified that she, her youngest daughter, Michelle, and Buck all lived together in a house located on Maplepark Road in Stow, Ohio. Johnson testified that she and Michelle lived together in the upstairs of the house, while Buck lived on the bottom floor of the house. Because the bottom floor of the house did not contain a formal bedroom, Johnson testified that she hung a curtain to provide Buck with some privacy. However, Johnson testified that one would need to walk through Buck's living area in order to access the backyard, the laundry room, or the garage.

{¶45} Additionally, Johnson testified that she drove to West Virginia to visit family on March 12, 2014. Johnson testified that while she was in West Virginia, she saw that Michelle had posted a photograph to Facebook, which was dated Friday, March 14, 2014 at 12:06 p.m. Johnson stated that this was the last contact that she ever had with Michelle. Johnson further testified that she became concerned about Michelle when, at 8:35 a.m. on Saturday, March 15, 2014, Buck sent her a message on Facebook informing her that she had not seen Michelle since the previous day. Johnson replied that she would try contacting Michelle to find out where she was. Johnson testified that she eventually reported Michelle's absence to the Stow Police Department after being unable to contact Michelle and learning from Michelle's boss that she had not reported to work.

{¶46} Officer Jason Bailey of the Stow Police Department testified that he received a phone call from Diane Johnson on Saturday, March 15, 2014, reporting her daughter as a possible missing person. Officer Bailey testified that he went to the Maplepark Road residence at roughly 6:00 p.m. in an effort to locate Michelle. Officer Bailey testified that he knocked on the front door of the house, but did not get a response. He then walked around the house and entered the fenced-in backyard through a gate. Officer Bailey stated that he then looked inside of a makeshift shed that was on the property and discovered a lifeless human body lying face down under a blanket, towel, and car tire. The body was later identified as Michelle Johnson. Officer Bailey stated that he subsequently contacted his supervisor to report a potential homicide and made efforts to secure the scene, particularly by preserving shoeprints that were visible in the mud and dog feces near the victim's body. Investigators later determined that the victim had been dragged to and hidden in the shed after she was already deceased. The chief medical examiner testified that Michelle Johnson's death was a homicide caused by "sharp force injuries

to the neck." Buck's former manager at Burger King testified that on Friday, March 14, 2014, Buck was scheduled to work the night shift. However, the former manager and other co-workers testified that Buck called off that evening in order to seek medical treatment after cutting her hand with a knife while at home.

{¶47} While investigating the crime scene at the Maplepark Road residence, BCI Agent Brenda McNeely testified that she also observed the shoeprints that were present in the mud and dog feces in the backyard. She specifically noted that the shoeprints made a waffle-like pattern. Agent McNeely stated that she and another agent made a cast of one of the shoeprints that was in the mud near the victim's body. She also took pictures of a number of the other shoeprints discovered around the crime scene. Police subsequently collected Buck's shoes as evidence and sent them to BCI for testing. Daniel Davison, a forensic analyst with BCI, testified that after examining Buck's shoes, the photographs of the shoeprints from the crime scene, and the cast from the shoeprint, he concluded that Buck's shoes, or a pair of shoes with the same characteristics as Buck's shoes, could have made the waffle-like shoe impressions that were discovered near the victim's body.

{¶48} Moreover, Officer Bailey testified that once backup arrived at the crime scene, he entered the house through the front door in order to ensure that no other victims or persons were inside. Officer Bailey stated that he observed suspected bloodstains while walking through the bottom floor of the house. Multiple agents from BCI testified that during their investigation inside of the Maplepark Road residence, they observed suspected bloodstains in numerous locations. These agents further testified that the suspected bloodstains were only discovered in the lower level of the house, where Buck resided. Agent McNeely specifically testified that based on the numerous bloodstains detected, she was able to discern that Michelle Johnson was

killed in the lower level of the residence around Buck's sleeping area and the laundry room. Another BCI agent, George Staley, testified that after inspecting the interior of the residence, he was able to determine that an attempt had been made to clean up the crime scene following Michelle Johnson's death. The BCI agents also took swabs of suspected bloodstains from the residence, as well as swabs from the victim's fingernail clippings, for DNA testing.

{¶49} Samuel Troyer, a DNA forensic analyst with BCI, tested the swabs that were taken from the crime scene and from the interior of Buck's car. Troyer testified that the DNA profiles from the swabs taken from the suspected bloodstains on library books found within Buck's car were consistent with Michelle Johnson. Moreover, Troyer testified that the DNA profiles from a number of the swabs of suspected bloodstains taken from the lower level of the Maplepark Road residence were consistent with either Buck or Michelle Johnson, or a mixture of the two. Specifically, Troyer testified that the DNA profile from the swab taken from Michelle Johnson's left hand fingernail clippings was a mixture, meaning that more than one person's DNA was present. Troyer explained that the major DNA profile from the fingernail clippings is consistent with the victim, Michelle Johnson, and that the minor DNA profile is consistent with contributions from at least Buck. Additionally, Troyer stated that Buck could not be excluded as the source of the DNA from the swabs of suspected bloodstain taken from the washing machine, the wall above the bathroom sink, and the garage floor. Troyer concluded that based on the national database provided by the FBI, the expected frequency of occurrence of the DNA profile from these swabs is one in 1,250,000,000,000,000,000 (one quintillion, two hundred and fifty quadrillion) unrelated individuals. Troyer further testified that Buck could not be excluded as a contributor to the DNA from the swab taken from the victim's left hand fingernail clippings and the swab of suspected bloodstain taken from the handle of a paint can that was found in the

laundry room near the bottle of bleach. He explained that based on the FBI's national database, the proportion of the population that cannot be excluded as possible contributors to the mixture of DNA profiles on the swabs from the left hand fingernail clippings and the handle of the paint can is one in 751,300 unrelated individuals and one in 84,320,000 unrelated individuals, respectively. Also, Troyer stated that Buck could not be excluded as a contributor of the DNA from one of the three swabs taken from the bottle of bleach in the laundry room. Troyer concluded that the proportion of the population that cannot be excluded as possible contributors to the mixture of DNA profiles on the swab from the bleach bottle is one in 3,880 unrelated individuals.

{¶50} Lastly, the mailman and two neighbors testified that they saw Buck at her Maplepark Road home at some point on either Friday, March 14, 2014, or Saturday, March 15, 2014, prior to the police discovering Michelle Johnson's body. Specifically, one neighbor testified that between 8:00 a.m. and 10:00 a.m. on Saturday, March 15, 2014, he observed Buck walking near the shed in her backyard with the Johnsons' dog. This neighbor further testified that he is familiar with the Johnsons' dog and that it was acting very unusual on this particular morning. Also, the mailman who typically delivers the mail on Maplepark Road testified that at approximately 3:30 p.m. on Saturday, March 15, 2014, he delivered a certified letter that was addressed to Buck. The mailman testified that Buck answered the door and signed for her letter.

{¶51} Viewing this evidence in a light most favorable to the State, we conclude that the evidence presented at trial was sufficient for a jury to conclude that Buck caused the death of Michelle Johnson. Moreover, the chief medical examiner testified that Michelle Johnson suffered a total of 32 stab or incised wounds. This testimony alone is sufficient evidence to establish Buck's purpose to kill. *See State v. Scudder*, 71 Ohio St.3d 263, 274 (1994) ("[T]he

number and nature of [the victim's] stab wounds clearly established appellant's purpose to kill.").

{¶52} Accordingly, Buck's seventh assignment of error is overruled.

**Assignment of Error VIII**

**The trial court erred in [admitting] over the objection of defense counsel the information regarding the DNA testing completed by Dr. Samuel Troyer as he did not complete all four steps of the DNA identification process and the other scientist who completed steps one through three did not testify at all.**

{¶53} In her eighth assignment of error, Buck argues that the trial court erred by admitting the forensic DNA analyst's testimony concerning his DNA testing because the analyst did not personally perform all four steps of the DNA process. However, a careful review of the transcript reveals that while Buck did object to the forensic DNA analyst's testimony on the basis that some of his testimony violated Crim.R. 16(K), Buck did not specifically object on the basis that the analyst did not personally conduct all four steps of the DNA identification process. Accordingly, as it relates to her argument concerning the DNA identification process, we conclude that Buck has forfeited all but plain error on appeal. Although Buck has preserved plain error review, she has failed to argue the existence of plain error on appeal. This Court has repeatedly noted that it will not sua sponte fashion an unraised plain error argument and then address it. *See McCrae*, 2015–Ohio–1803, at ¶ 8; *see also* App.R. 16(A)(7).

{¶54} Buck's eighth assignment of error is overruled.

III.

{¶55} With all of Buck's assignments of error having been overruled, the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

WHITMORE, P. J.
CONCURS.

HENSAL, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

JENNIFER A. CUNDIFF, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.