[Cite as *State v. Kraus*, 2016-Ohio-8003.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No. OT-15-034 |
| Appellee | Trial Court No. 14 CR 150 |
| v. | |
| Steven W. Kraus | **DECISION AND JUDGMENT** |
| Appellant | Decided:  December 2, 2016 |

* * * * *

Frank Spryszak, Special Prosecuting Attorney, for appellee.

Geoffrey L. Oglesby and Danielle Rancour, for appellant.

* * * * *

**YARBROUGH, J.**

{¶ 1} Appellant, Steven Kraus, appeals the judgment of the Ottawa County Court of Common Pleas, convicting him following a jury trial of one count of theft from an elderly person in violation of R.C. 2913.02, a felony of the fifth degree.  For the reasons that follow, we affirm.

**I.  Facts and Procedural Background**

{¶ 2} The testimony from the trial reveals that Helen Stines was the owner of real property located at 653 South Lightner Road in Danbury Township, Ottawa County, Ohio. The property consisted of an old farmhouse and several outbuildings. The farmhouse had not been lived in for approximately eight years, and by all accounts was filled with clutter, junk, and garbage to such an extent that it was difficult to walk through the house.

{¶ 3} In early 2014, Stines experienced some financial difficulty, and contacted a local real estate agent, Jenine Porter, to sell the property. On April 2, 2014, Stines agreed to list the property for approximately $50,000, which they determined was the value of the land. Stines and Porter also had a conversation about what to do with the contents of the house. Stines testified that she authorized Porter to have someone come and give a value for a 1932 Chevy that was located in one of the outbuildings, but she did not authorize Porter to sell the car, or any of the other contents of the house.

{¶ 4} The next day, April 3, 2014, Porter encountered appellant at a continuing education seminar. Porter, aware that appellant was an auctioneer and a realtor, asked appellant if he knew anyone that could help her determine the value of Stines' car. According to Porter, appellant responded that he, in fact, auctioned "chattels," which are flatware, dishes, and other things of that nature. Porter testified that she replied that she knew Stines was interested in selling the car, but as to anything else she would have to see if Stines was willing to talk to appellant. Porter testified that the next morning, April 4, 2014, appellant contacted her and told her that he would go look at the car, which

2.

Porter found agreeable. Porter expressly testified that she only authorized appellant to go into the garage to look at the car; she did not give him permission to go into the house or to appraise other property.

{¶ 5} Appellant remembers his exchange with Porter differently. Appellant testified that on April 3, 2014, Porter approached him and asked if he could help her with a client that needed to sell her property quickly, adding that there were antiques in the house. Appellant testified that he and Porter agreed that he would go to the property that afternoon to evaluate the personal belongings for a possible auction. Notably, the house was unsecured; there was no lockbox on the house, and the doors were unlocked.[1] Appellant testified that he went to the property around 1:30 p.m. on April 3, 2014, in his dress clothes, and found the house in complete disarray. Appellant looked around the house and outbuildings for a little while, and then left the property.

{¶ 6} Appellant testified that he contacted Porter later that day and had a conversation with her about the options of auctioning the items. He stated that there were some valuable things at the house, but he would need 45 to 60 days to clean up the property and prepare it for an auction. He also explained that having an offsite auction was not a viable option because most of Stines' proceeds would go to pay for the labor to move the items. Appellant then inquired why Stines was not auctioning the real property, and conveyed his belief that she could get $80,000 or $90,000 for it. Porter responded that she had three offers on the property already, and Stines wanted to sell the property

---

[1] Porter testified that she could not put a lockbox on the house because Stines did not have a key for the house.

3.

fast, so an auction was not going to be an option. Appellant testified that, knowing Stines needed money and "being the good Samaritan," he would be interested in buying some things, and would be happy to talk to Stines about that.

{¶ 7} The next morning, April 4, 2014, appellant contacted Porter and offered to go back over to the house because he was unable to look at the car the previous day. He also inquired whether Porter had asked Stines if she wanted to sell any of her personal property. Appellant testified that, later that morning, he spoke with Porter again, and she conveyed that Stines did agree to sell him some things from the house, and that he could go back into the house to "look for anything that you want to maybe purchase and take pictures of the car."

{¶ 8} Appellant testified that he returned to the house around 1:00 p.m. on April 4, 2014. He looked through the house and put items that he was interested in into cardboard boxes. After he had collected a couple boxes and taken them to the dining room—which was the only space in the house where the floor was visible—appellant noticed that guns that were in a gun cabinet the day before were now missing. This led appellant to believe that someone was stealing from the house. Knowing that the house was unsecure, and acting under the belief that he had an oral contract with Porter and a fiduciary duty to protect the assets, appellant loaded the boxes he collected and put them into his van. Appellant explained that he also took the items because the house had no electricity and he needed better lighting to be able to examine the property to determine a fair value for

4.

it. Appellant testified that he took a record player, a few boxes with "guy things," a lamp shade, and a saxophone.

{¶ 9} Unbeknownst to appellant, Stines' neighbor, Roger Pean, saw appellant taking the items, including the record player, from Stines' house on April 4, 2014. Pean took several pictures of appellant with his phone. Pean forwarded the pictures by text message to Stines' son, Clay Stines, who also lives next door to Stines' property.

{¶ 10} When Clay received the pictures from Pean, he knew that an auctioneer was supposed to be at the property to look at some antiques in the house and an antique car, but he did not think the auctioneer was supposed to take any property. Clay then contacted his girlfriend, Tabitha Loroff, who was friends with Porter, to relay the information. Clay testified that after work that evening, April 4, 2014, he went to Stines' house and removed guns that were left in the gun cabinet—"a .410 and a .22 Magnum" and "a Daisy BB gun pistol." Missing, however, was a double barrel 12 gauge shotgun. Notably, an unrelated party, Kevin Francis, testified that he was interested in purchasing the house and went through the property with his realtor on the morning of Thursday, April 3, 2014. Francis testified that, at that time, there was not a double barrel 12 gauge shotgun in the gun cabinet.

{¶ 11} Appellant testified that when he returned home on April 4, 2014, around 3:00 p.m., he contacted Porter to tell her about the missing guns. According to appellant, she sounded agitated, and stated that she did not want to have anything more to do with appellant buying items from Stines. Further, she conveyed that she knew the guns were

5.

not at the house because Clay had taken them. Appellant testified that he then realized that another person was involved, and it was not just Stines' property, so he returned the "guy stuff" and the record player to the house around 5:00 p.m. Appellant still had one box of items that contained a lamp shade, a mirror, and several other miscellaneous things, which he later examined to determine their value.

{¶ 12} The next morning, Saturday, April 5, 2014, appellant unsuccessfully attempted to contact Porter to get Stines' phone number to find out what was going on and to complete the sale. When he did not hear back from Porter, appellant contacted his employer, Jeff Berquist—who was alerted to the situation by Loroff, a former employee of Berquist—and Berquist gave appellant Loroff's phone number. Appellant contacted Loroff and she agreed to meet him so that he could drop off the rest of the items. Appellant testified that he returned the box of items to Loroff, explained to her the value of the items, and gave her his business card.

{¶ 13} On Monday, April 7, 2014, Stines went to the Danbury Township police department to file a complaint. She ultimately gave the detective two lists of missing items, which included an all glass hurricane lamp, a magnifier, several porcelain dolls, a wicker baby buggy, and several other miscellaneous items. Stines indicated that she believed appellant stole the items.

{¶ 14} On November 19, 2014, appellant was indicted by the Ottawa County Grand Jury on one count of burglary in violation of R.C. 2911.12(A)(3), a felony of the third degree, one count of breaking and entering in violation of R.C. 2911.13(A), a felony

6.

of the fifth degree, and one count of theft from an elderly person in violation of R.C. 2913.02(A)(1) and (B)(3), a felony of the fifth degree. The matter proceeded to a three-day jury trial commencing on July 22, 2015. Following the state's presentation of its case-in-chief, the trial court granted appellant's Crim.R. 29 motion to dismiss as to the count of burglary. Thereafter, upon hearing all of the evidence, the jury returned a verdict of not guilty as to the count of breaking and entering, and guilty as to the count of theft from an elderly person. Appellant subsequently filed motions for a new trial and for acquittal, which the trial court denied. At sentencing, the court imposed two years of community control, and ordered appellant to pay a $2,500 fine.[2]

## II. Assignments of Error

{¶ 15} Appellant has timely appealed his conviction, and now asserts four assignments of error for our review:

I. The trial court committed structural error, and it was also plain error, when the trial court identified to the jury, while reading the jury instructions, who the owner of the property was and identified that person as the elderly victim when the indictment failed to do so.

II. The trial court erred by not granting the defendant's request for a new trial based on insufficient evidence and committed plain error by not giving a proper jury instruction on the element or enhancement of a theft offense against an elderly person.

---

[2] On September 14, 2015, the trial court stayed appellant's sentence pending appeal.

7.

III. The verdict was against the manifest weight of the evidence and was insufficient as a matter of law.

IV. Trial counsel was ineffective.

### III. Analysis

{¶ 16} In his first assignment of error, appellant contends that the trial court erred when it instructed the jury that Stines was the victim in this case. Specifically, the court stated,

> The Defendant is charged with theft. Before you can find him guilty, you must find beyond a reasonable doubt that on or about the 4th day of April, 2014, and in Ottawa County, Ohio, that the Defendant, with purpose to deprive the owner of property knowingly obtained or exerted control over that property without the consent of the owner, Ms. Stines, or a person authorized to give consent.

Appellant argues that by naming Stines as the victim the court interfered with the role of the jury to find every element of the crime proven beyond a reasonable doubt; particularly where the victim was not identified in the indictment and the evidence showed that some of the property belonged to Clay, thus Clay could have been the victim.

{¶ 17} Because appellant did not object to the jury instructions at the time of trial, we review his assignment for plain error. *See* Crim.R. 30(A); *State v. Underwood*, 3 Ohio St.3d 12, 444 N.E.2d 1332 (1983), syllabus ("The failure to object to a jury

8.

instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise.").  Plain error consists of a deviation from a legal rule, which is an obvious defect in the trial proceedings, and which affected the outcome of the trial.  Crim.R. 52(B); *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).  "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 18} Alternatively, appellant argues that the jury instruction constituted structural error.  "At its heart, the concept behind structural error is that certain errors are so fundamental that they obviate the necessity for a reviewing court to do a harmless-error analysis."  *State v. Hill*, 92 Ohio St.3d 191, 199, 749 N.E.2d 274 (2001).  A structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself."  *Id.* at 197, quoting *Neder v. United States*, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).

{¶ 19} Here, we find that neither doctrine provides appellant relief because the trial court's instruction was not in error.  Contrary to appellant's argument, the specific victim of the theft is not an element of R.C. 2913.02 to be found by the jury.[3]  Rather, the naming of a specific victim informs a defendant of what part of his conduct constituted

---

[3] R.C. 2913.02(A)(1) provides, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:  (1) Without the consent of the owner or person authorized to give consent."

9.

the offense for which he is being tried.  To that end, "A defendant is entitled to a bill of particulars that sets out the ultimate facts upon which the state expects to rely in establishing its case, and the state should be restricted in its proof to the indictment and to the particulars as set forth in the bill." *State v. Kersey*, 124 Ohio App.3d 513, 518, 706 N.E.2d 818 (1st Dist.1997).

{¶ 20} Appellant, exercising his right under R.C. 2941.07, requested a bill of particulars.  In the bill of particulars, the state indicated that

> Steven Kraus knowingly obtain[ed] or exerted control over property belonging to Helen Stines without the consent of Helen Stines or the consent of anyone authorized to give consent.  * * * The property that was stolen and not returned includes but is not limited to:  unknown number of antique wooden marbles, antique 12 gauge double barreled shotgun by an unknown maker, two antique die cast toy cars, two sets of silver flatware, carpet beater, brass lamp, large doll, collector's porcelain doll, three Strawberry Shortcake figurines, antique Penguin perfume bottle, set of four commemorative railroad plates, brass drum with calfskin drum head, wicker baby carriage with wire wheels, doll with wooden head, three metal cans, line magnifier, handmade twin size quilt.  The following property was taken but returned after the victim complained:  silver hand mirror, two decorative combs, cigar box, small cloth change purse, small depression

10.

glass dish, saxophone, acoustic guitar, several bracelets, one photo album, Tiffany lamp shade, bud vase, and an antique pin cushion.

{¶ 21} Thus, pursuant to the bill of particulars, appellant was on trial for the theft of Stines' property. He was not on trial for the theft of Clay's property. As such, the trial court did not err in instructing the jury that the owner of the property was Stines, since the instruction comported with the description in the bill of particulars.

{¶ 22} Accordingly, appellant's first assignment of error is not well-taken.

{¶ 23} In his second assignment of error, appellant argues that the trial court committed plain error by failing to properly instruct the jury that appellant had to have knowledge that the victim was elderly or was reckless in that regard, thus incorporating either a "knowingly" or "reckless" mens rea to that portion of R.C. 2913.02.

{¶ 24} Likewise, appellant argues that the trial court erred in denying his motion for a new trial, which was based upon the same reasoning. We review the denial of a motion for a new trial pursuant to Crim.R. 33 for an abuse of discretion. *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990), paragraph one of the syllabus.

{¶ 25} Relevant here, R.C. 2913.02(B) provides,

> (1) Whoever violates this section is guilty of theft.
>
> * * *
>
> (3) Except as otherwise provided * * *, if the victim of the offense is an elderly person, disabled adult, active duty service member, or spouse of an active duty service member, a violation of this section is theft from a

11.

person in a protected class, and division (B)(3) of this section applies. Except as otherwise provided in this division, theft from a person in a protected class is a felony of the fifth degree.

{¶ 26} Appellant relies on former R.C. 2901.21(B) to read an element of recklessness into the elderly person element. That statute provided,

When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense. R.C. 2901.21(B).[4]

{¶ 27} However, the Ohio Supreme Court has clarified,

---

[4] R.C. 2901.21 has since been amended to now provide,

(B) When the language defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. The fact that one division of a section plainly indicates a purpose to impose strict liability for an offense defined in that division does not by itself plainly indicate a purpose to impose strict criminal liability for an offense defined in other divisions of the section that do not specify a degree of culpability.

(C)(1) When language defining an element of an offense that is related to knowledge or intent or to which mens rea could fairly be applied neither specifies culpability nor plainly indicates a purpose to impose strict liability, the element of the offense is established only if a person acts recklessly.

12.

R.C. 2901.21(B), the statute for determining whether an offense imposes strict liability or requires proof of recklessness, applies only if "the section defining an offense does not specify any degree of culpability." If the section already requires proof of a culpable mental state for any element of the offense in any division or subdivision, R.C. 2901.21(B) does not apply, and the state need prove culpability only as specified in the section. *State v. Tolliver*, 140 Ohio St.3d 420, 2014-Ohio-3744, 19 N.E.3d 870, paragraph one of the syllabus.

{¶ 28} Here, the criminal theft statute already requires proof of the culpable mental state of "knowingly" in division (A). R.C. 2913.02(A) ("No person, with purpose to deprive the owner of property or services, shall *knowingly* obtain or exert control over either the property or services in any of the following ways * * *.") (Emphasis added.)). Thus, R.C. 2901.21(B) does not apply, and the state need not prove culpability as to the age of the victim. Therefore, the trial court did not err when it failed to instruct the jury that appellant was required to have knowledge of Stines' age.

{¶ 29} Accordingly, appellant's second assignment of error is not well-taken.

{¶ 30} In his third assignment of error, appellant challenges his conviction as being based on insufficient evidence and against the manifest weight of the evidence.

{¶ 31} Insufficiency and manifest weight are distinct legal theories. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d

541 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 32} In contrast, when reviewing a manifest weight claim,

The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, quoting *Thompkins* at 387.

{¶ 33} In his brief, appellant argues that his conviction should not stand because there is no evidence to prove that the items that Stines claimed were missing were even in the house on April 3, 2014, and there is no evidence to prove that appellant took those items. We do not find appellant's argument persuasive.

{¶ 34} The theft statute states, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or

services in any of the following ways:  (1) Without the consent of the owner or person authorized to give consent."  R.C. 2913.02(A)(1).

{¶ 35} Here, irrespective of the list of items Stines claimed were missing, the uncontroverted testimony was that appellant boxed up several pieces of Stines' property, loaded them in his van, left the premises, and only later returned at least some of the items when people complained.  Furthermore, although disputed by appellant, Stines and Porter both testified that appellant removed the property without their consent.  Thus, we hold that there was sufficient evidence to allow a rational trier of fact to find the elements of theft proven beyond a reasonable doubt.  Therefore, appellant's conviction is not based on insufficient evidence.

{¶ 36} As to appellant's manifest weight argument, we do not find that this is the exceptional case where the evidence weighed heavily against the conviction.  Upon our review of the record, this is a close case.  In addition to the conflicting testimony regarding whether appellant had permission to enter the house, there is also a discrepancy regarding the timing of the guns being removed from the gun safe.  Appellant testified that he took the items out of the house on April 4, 2014, because he noticed the gun safe had been emptied from the day before.  Clay testified, however, that he did not remove the guns until after he learned that appellant was taking items out of the house.  While the removal of Clay's guns is not direct proof that appellant committed theft since appellant was not on trial for taking Clay's property, the timing of the removal is material to appellant's explanation as to why he removed the other property.  The jury was presented

15.

with this testimony, and through its verdict made a determination that appellant's testimony was not credible.  Notably, under a manifest weight review, we must extend "special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor." *State v. Moffitt*, 6th Dist. Erie No. E-15-034, 2016-Ohio-5861, ¶ 49, citing *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14. "An appellate court 'will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict.'" *Id.*, quoting *State v. Cunningham*, 2d Dist. Clark No. 10-CA-57, 2012-Ohio-2794, ¶ 102.  In this case, we do not find the evidence supporting appellant's version of the events to be so overwhelming that the jury clearly lost its way and created a manifest miscarriage of justice in finding him guilty.  Therefore, we hold that appellant's conviction is not against the manifest weight of the evidence.

{¶ 37} Accordingly, appellant's third assignment of error is not well-taken.

{¶ 38} Finally, in his fourth assignment of error, appellant argues that he received ineffective assistance of counsel.  To prevail on a claim of ineffective assistance, appellant must satisfy the two-prong test developed in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  That is, appellant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the result of the proceedings

16.

would have been different. *Id.* at 687-688, 694. "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697. Further, in evaluating an ineffective assistance claim, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 689.

{¶ 39} Specifically, appellant contends that counsel was ineffective for failing to object to the trial court's instruction to the jury that Stines was the owner of the property, and for failing to object to "other acts" testimony from Clay. We hold that appellant has failed to demonstrate sufficient prejudice to support his claim of ineffective assistance. As to the former, as discussed in appellant's first assignment of error, the trial court did not err in instructing the jury that Stines was the owner of the property. As to the latter, even assuming that Clay's testimony that appellant took the 12 gauge shotgun was inadmissible other acts evidence under Evid.R. 404(B), appellant has not demonstrated that the result of the proceeding would have been different had that testimony been excluded. First, Clay's testimony relative to the shotgun was undermined by the testimony of Francis that the shotgun was not in the gun case on April 3, 2014, prior to appellant arriving at the house. Second, it is not contested that appellant did in fact take some of Stines' property out of the house, thus testimony regarding whether appellant also took Clay's shotgun is immaterial. Therefore, because appellant has failed to

17.

establish the second prong of the *Strickland* test, we hold that his claim of ineffective

assistance is without merit.

**{¶ 40}** Accordingly, appellant's fourth assignment of error is not well-taken.

### IV. Conclusion

**{¶ 41}** For the foregoing reasons, the judgment of the Ottawa County Court of

Common Pleas is affirmed.  Appellant is ordered to pay the costs of this appeal pursuant

to App.R. 24.

Judgment affirmed.


        A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.



Mark L. Pietrykowski, J.           _____
                                                                JUDGE

Thomas J. Osowik, J. _____

Stephen A. Yarbrough, J. _____           _____
CONCUR.                                                        JUDGE

                                                     _____
                                                                JUDGE