[Cite as *State v. Roberts*, 2017-Ohio-9079.]

STATE OF OHIO            )            IN THE COURT OF APPEALS
                        )ss:          NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE          )

STATE OF OHIO                         C.A. No.      16AP0030

       Appellee

       v.                            APPEAL FROM JUDGMENT
                                     ENTERED IN THE
WILLIAM M. ROBERTS                   COURT OF COMMON PLEAS
                                     COUNTY OF WAYNE, OHIO
       Appellant                     CASE No.     2015 CRC-I 000094

DECISION AND JOURNAL ENTRY

Dated: December 18, 2017

TEODOSIO, Judge.

{¶1}    Appellant, William M. Roberts, appeals from his convictions in the Wayne County Court of Common Pleas.  We affirm.

I.

{¶2}    In January of 2014, Springfield police began investigating an adult male ("N.B.") regarding his attempt to lure a 12-year-old from Canada.  The police executed a search warrant at N.B.'s home, discovered a large amount of child pornography, and arrested him for importuning and disseminating matter harmful to juveniles.  N.B. is a convicted sex offender currently serving time in a federal penitentiary.  The investigation of N.B. eventually led the police to conduct an interview with another man, Mr. Roberts.  Wayne County Children Services soon became involved and interviewed Mr. Roberts' biological daughter ("E.R.") and his ex-girlfriend's daughter ("B.S.").  Although initially hesitant to disclose any wrongdoing by Mr.

Roberts, both of the children eventually disclosed to various people that Mr. Roberts had sexually abused them.

{¶3} Mr. Roberts was indicted on one count of gross sexual imposition related to E.R., four counts of rape related to B.S., and four counts of unlawful sexual conduct with a minor related to B.S. After a bench trial, Mr. Roberts was convicted of gross sexual imposition and four counts of unlawful sexual conduct with a minor. He was sentenced to an aggregate total of 25 years in prison.

{¶4} Mr. Roberts now appeals from his convictions and raises five assignments of error for this Court's review.

## II.

### ASSIGNMENT OF ERROR ONE

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT PERMITTED A NURSE TO TESTIFY AS AN EXPERT WITNESS IN VIOLATION OF CRIMINAL RULE 16(K) AND [EVID.R.] 702

{¶5} In his first assignment of error, Mr. Roberts argues that: (1) the State did not timely provide discovery under Crim.R. 16(K), to wit: the name, qualifications, and written report of an expert witness; (2) the trial court erred by permitting the nurse to testify as an expert; and (3) the trial court erred when it failed to hold a *Daubert* hearing to determine the qualifications of the nurse to testify as an expert. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). We disagree with all propositions.

### Alleged Discovery Violations

{¶6} "Crim.R. 16 governs discovery during criminal proceedings." *State v. Buck*, 9th Dist. Summit No. 27597, 2017-Ohio-273, ¶ 32, citing *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 428 (1994). When a discovery violation is alleged, the trial court "may order such

party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L)(1). "A trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *City of Lakewood v. Papadelis*, 32 Ohio St.3d 1 (1987), paragraph two of the syllabus. Violations of Crim.R. 16 by the prosecutor constitute reversible error "'only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect.'" *State v. Halgrimson*, 9th Dist. Lorain No. 99CA007389, 2000 Ohio App. LEXIS 5162, *7 (Nov. 8, 2000), quoting *State v. Joseph*, 73 Ohio St.3d 450, 458 (1995). Courts have broad discretion over discovery matters and appellate courts shall review a trial court's rulings on these matters for an abuse of discretion. *State ex rel. Duncan v. Middlefield*, 120 Ohio St.3d 313, 2008-Ohio-6200, ¶ 27. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶7} Crim.R. 16(K) states:

An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

Crim.R. 16(K) prevents unfair surprise by providing notice and allowing the defense an opportunity to challenge the expert's findings, analysis, or qualifications, and possibly pursue support from an adverse expert who could discredit the opinion after carefully reviewing the written report. *Buck* at ¶ 33.

{¶8} In the case sub judice, Mr. Roberts filed a discovery request on April 10, 2015. The State filed a response on May 2, 2015, which included a written report from Ms. Mary Anne Belanger, identifying her as a registered nurse ("RN") and a sexual assault nurse examiner ("SANE nurse") for adults, adolescents, and pediatrics. Mr. Roberts' trial was held almost one year later on April 18, 2016, and April 19, 2016. At trial, defense counsel objected to Ms. Belanger being allowed to testify. The prosecutor stated that Ms. Belanger's report was provided almost one year ago and contained a sufficient summary of her qualifications in compliance with Crim.R. 16(K) because it contained her signature, which explicitly identified her as an RN and a SANE nurse. Defense counsel conceded that he received the report almost one year before trial and was aware of who Ms. Belanger is, but argued that an expert's signature merely indicating she is an RN and a SANE nurse is an insufficient summary of qualifications under Crim.R. 16(K).

{¶9} On April 12, 2016, six days before trial, the State filed an addendum to its discovery response that listed Ms. Belanger as a potential witness and included her address and curriculum vitae ("CV"). The prosecutor stated at trial that Ms. Belanger's CV "merely expand[ed] upon" the summary of qualifications provided a year ago. Mr. Roberts argued that notification of Ms. Belanger as a potential witness six days before trial violated Crim.R. 16. Crim.R. 16(I) states, in part, that "[e]ach party shall provide to opposing counsel a written witness list, including names and addresses of any witness it intends to call in its case-in-chief, or

reasonably anticipates calling in rebuttal or surrebuttal." Notably, Crim.R. 16(I) does not explicitly provide a timeframe within which the witness list must be provided. *See State v. Meyers*, 11th Dist. Geauga Nos. 2015-G-0005, 2015-G-0006, & 2015-G-0007, 2015-Ohio-4238, ¶ 22. Defense counsel argued at trial that although he "was well aware of who Ms. Belanger is and [was] familiar with her work" and received her report "a long, long time ago," he was not prepared for her testimony and "would want another expert to review [her] report and * * * interpret it * * *." Counsel did not request a continuance of the trial and instead stated, "[T]o say that the defense is required to help the State mitigate [its] error * * * is an inappropriate way to look at the law * * *."

{¶10} The trial court reviewed Ms. Belanger's report and CV, inquired of the parties, and ultimately decided that no discovery violation had occurred. The court noted that Crim.R. 16(K) permits modification of the twenty-one day period to provide the written report and summary of qualifications for good cause shown if the parties are not prejudiced. The court further stated, "a lot of this curriculum vitae is just a list of all the talks she's given" and ultimately concluded, "I think the key point is the defense was provided with her report[,] and to your point that you would have wanted an expert witness to review that, you had her report and what she was going to give an opinion on and I think that's the key, you know, for [close to one year]."

{¶11} We cannot conclude that the trial court abused its discretion in finding no discovery violation here. Mr. Roberts was provided with Ms. Belanger's report, listing her as an RN and SANE nurse, almost an entire year before his trial, which allowed him ample opportunity to have another expert review and interpret it. Defense counsel was adamant that he did not want a continuance and instead chose to proceed and cross-examine Ms. Belanger at trial.

Even assuming arguendo that the court had decided the prosecutor violated Crim.R. 16, it would not have been reversible error for the court to allow Ms. Belanger to testify because there is no evidence in the record that: (1) the prosecutor committed a willful violation, (2) foreknowledge of the information would have benefited Mr. Roberts in the preparation of his defense, and (3) Mr. Roberts suffered some prejudicial effect. *See Halgrimson*, 2000 Ohio App. LEXIS 5162, at *7.

<u>Ms. Belanger's Testimony</u>

**{¶12}** "Trial courts have broad discretion in determining the admissibility of expert testimony, subject to review for an abuse of discretion. * * * In general, courts should admit such testimony when material and relevant, in accordance with Evid.R. 702 * * *." *Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, ¶ 16. Pursuant to Evid.R. 702, a witness may testify as an expert if: (1) her testimony "either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;" (2) she "is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;" and (3) her testimony "is based on reliable scientific, technical, or other specialized information." "The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function." *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 113.

**{¶13}** Ms. Belanger testified that she is employed at the Wooster Community Hospital and has been employed as a SANE nurse for the Wayne County Children's Advocacy Center ("CAC") since 2004. She worked as an RN in the critical care areas of hospitals in both New York and Ohio from 1984 to 2001. She is nationally certified as a SANE nurse for adults,

adolescents, and pediatrics. In her role as a SANE nurse at the CAC, she observes the interviews of children and takes notes. She then conducts a medical examination and further converses with the children to assist in the medical diagnosis. She testified that she has conducted close to 500 examinations of children for sexual abuse since 1998.

{¶14} Ms. Belanger testified that she observed Ms. Jennifer Garman's interview of B.S. on January 23, 2014, and took notes. Ms. Belanger then personally conducted a medical examination of B.S. on that same day. More than 96 hours had elapsed between the time of the alleged incidents and Ms. Belanger's examination of B.S. She testified that Ohio has established a cut-off period of 96 hours to collect evidence and conduct a medical exam. Ms. Belanger did not find any acute injuries or acute trauma on B.S., but testified that "[t]he best determinant of sexual abuse in a child is their story, [because] there [are] going to be reasons why when I look at that child, I'm not going to see acute trauma at the time of the exam." She explained that children generally do not disclose right away and any physical injuries may have already had time to heal. Ms. Belanger likened a hymen to a hair scrunchie and testified that she ran a Q-tip around the edge of the B.S.' hymen and saw no injury. She further analogized that a hymen can heal like the mucosal skin inside of one's cheek days or months after it has been bitten. She testified that she did not find physical signs of abuse in many of her almost 500 examinations. She testified that "statistics, according to any of the literature and the research is about 96 percent of the cases that we see, will not have acute injury, for the exact reasons that I told you before * * * [l]ong time for disclosure and [then] healing of that tissue." She testified that the disclosures made by B.S. to her during the exam were consistent with the disclosures B.S. made earlier in the interview with Ms. Garman.

{¶15} Ms. Belanger's testimony was within the scope of her expertise as a SANE nurse and related to matters beyond the knowledge or experience of lay persons. She is a trained and experienced medical professional who specializes in cases involving the sexual assault of children and has conducted almost 500 examinations since 1998. Her testimony was based on specialized information regarding Ohio's cut-off period for collecting evidence and conducting a medical exam, the lack of physical evidence in her almost 500 prior examinations, and statistics that 96 percent of the cases will not have acute injury. We conclude that the trial court did not abuse its discretion in allowing Ms. Belanger to testify at trial.

{¶16} Mr. Roberts also argues that once Ms. Belanger testified that a hymen is comparable to a hair scrunchie or cheek tissue and can heal over time, the trial court erred by not conducting a *Daubert* hearing to determine her qualifications to render such an opinion. A trial court need not always hold a separate *Daubert* hearing prior to the testimony of an expert. *See Sliwinski v. St. Edwards*, 9th Dist. Summit No. 27247, 2014-Ohio-4655, ¶ 15. Nonetheless, Mr. Roberts never requested a *Daubert* hearing or challenged the relevance and reliability of Ms. Belanger's testimony and has therefore waived all but plain error. *See Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, at ¶ 117. Mr. Roberts has not argued plain error on appeal and this Court will not create a plain error argument on his behalf. *See State v. Hill*, 9th Dist. Summit No. 26519, 2013-Ohio-4022, ¶ 18.

{¶17} Mr. Roberts' first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

PROSECUTORIAL MISCONDUCT DENIED MR. ROBERTS OF HIS CONSTITUTIONAL RIGHT TO DUE PROCESS AND A FAIR TRIAL

{¶18} In his second assignment of error, Mr. Roberts argues that the prosecutor improperly (1) intentionally failed to provide an expert report that specifically contained an

opinion as to hymen tissue regrowth and statistical data, (2) procured testimony of his alleged and unindicted rape of E.R. in violation of Evid.R. 404(B), (3) commented during closing arguments that Mr. Roberts was continuing to manipulate E.R. during trial when he cried in front of her, (4) intentionally procured testimony from Ms. Belanger that B.S. could have been vaginally raped multiple times despite the lack of medical evidence, constituting vouching. We decline to address the merits of these arguments.

{¶19} "In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a court determines if the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced." *State v. Wright*, 9th Dist. Summit No. 25280, 2010-Ohio-5106, ¶ 22, citing *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "An error affects the appellant's substantial rights if it affected the outcome of the trial." *State v. Moorer*, 9th Dist. Summit No. 27843, 2016-Ohio-5216, ¶ 17, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶20} While Mr. Roberts objected to the expert report at trial on other grounds, he failed to raise any objections specifically arguing prosecutorial misconduct as to the report or any other comments or conduct of the prosecutor. "[W]hen a defendant fails to object to alleged prosecutorial misconduct, the defendant forfeits all argument except that of plain error." *State v. Warrington*, 9th Dist. Medina No. 14CA0080-M, 2016-Ohio-244, ¶ 13. Again, Mr. Roberts has not argued plain error on appeal and this Court will not construct a plain error argument on his behalf. *See State v. Glunt*, 9th Dist. Medina No. 13CA0050-M, 2014-Ohio-3533, ¶ 26.

{¶21} Mr. Roberts' second assignment of error is overruled.

## ASSIGNMENT OF ERROR THREE

THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE
EVIDENCE AND MUST BE REVERSED.

**{¶22}** In his third assignment of error, Mr. Roberts argues that his convictions are against the manifest weight of the evidence. We disagree.

**{¶23}** This Court has stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

Gross Sexual Imposition (E.R.)

**{¶24}** Mr. Roberts was convicted of one count of gross sexual imposition under R.C. 2907.05(A)(4), which states in part: "No person shall have sexual contact with another, not the spouse of the offender [or] cause another, not the spouse of the offender, to have sexual contact with the offender [when the] other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person."

**{¶25}** E.R. testified that Mr. Roberts is her biological father. She expressed difficulty in testifying at trial "because [her] dad is in here." She testified that Mr. Roberts sexually abused her when she was in the age range of seven-to-nine years old. Mr. Roberts sometimes slept in

her bed with her and would touch her vagina with his hands on the outside of her clothes. He would use four fingers and "rub it" up and down, which would scare her. She testified that he would also "grab [her] butt and stuff." He would get into E.R.'s bed with her and touch her with his hand and penis. Mr. Roberts' clothes remained "[o]n, but, he had like a hole in his pants" where his penis came through. When asked where his penis would go, she testified, "One time, he did it in my vagina" and "[i]t hurt." E.R. testified that she did not tell anyone because she was scared she would get in trouble, but she eventually told her school counselor and the CSB workers.

{¶26} Ms. Francesca Abruzzino of Wayne County Children Services subsequently interviewed E.R. at the Wayne County CAC regarding allegations of sexual abuse by Mr. Roberts and N.B. Ms. Abruzzino testified that E.R. indicated no "private touches," but that she was taught to play the "bouncy game" with N.B. where she would have to bounce on his lap. She also played the bouncy game with Mr. Roberts in exchange for toys. E.R. also disclosed that Mr. Roberts would walk in on her in the shower and would watch her change clothes. Officer Joseph Holsopple testified as well that Mr. Roberts demonstrated the bouncy game for both him and an FBI agent.

{¶27} Ms. Katie Krichbaum testified that she interviewed E.R. at the Wayne County CAC regarding the sexual abuse allegations in this case. She testified that it is not uncommon for children to not disclose allegations in one interview, but to then disclose allegations in a subsequent interview because "[s]ometimes personalities just don't match between the interviewer and interviewee." Mr. Roberts now labels Ms. Krichbaum's testimony as "wild[] speculat[ion]," but then proceeds with his own speculation instead, claiming it is more plausible that B.S. influenced E.R. to make these false allegations because the two are close, like sisters.

**{¶28}** Mr. Roberts also argues that there was no evidence corroborating E.R.'s allegations that he touched her with his fingers. "Section 2907.05, however, does not require corroboration of a victim's testimony to support a conviction for gross sexual imposition." *State v. Thomas*, 9th Dist. Wayne No. 10CA0003, 2010-Ohio-6373, ¶ 12.

<u>Unlawful Sexual Conduct with a Minor (B.S.)</u>

**{¶29}** Mr. Roberts was also convicted of four counts of unlawful sexual conduct with a minor under R.C. 2907.04(A), which states: "No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard."

**{¶30}** B.S. testified that she would go on walks with Mr. Roberts and he would reach between her shirt and training bra and touch her breasts. She also testified that there was an incident when she was cooking dinner and Mr. Roberts called her into his bedroom. Inside the bedroom, she found Mr. Roberts to be naked under a blanket. He told her to come and lie down with him, but she turned around and tried to leave. Mr. Roberts grabbed her hand or arm, pulled her to the bed, and made her touch his penis. B.S. started crying, jerked away from Mr. Roberts, and he let her go, but told her not to tell anybody. During another incident, Mr. Roberts got into a pullout bed with B.S. She tried to "scoot away" from him, but he reached his arm around her belly to hold her. Mr. Roberts turned B.S. over, pulled her pants down, and put his penis in her vagina. Again, Mr. Roberts told B.S. not to tell anybody. Another incident occurred during a "movie night" where the family members all slept on the living room floor together. B.S. testified that she later went upstairs and Mr. Roberts followed her. He lied down next to her in bed, pulled her pants down, and put his penis in her vagina. B.S. testified as to two other

incidents where Mr. Roberts joined her on E.R.'s bed and on a couch. He removed her pants on both occasions and put his penis in her vagina. She testified that her mother and Mr. Roberts gave her half of a wine cooler one time and she became tired and went to bed. Mr. Roberts then joined her in bed, took the blanket off, pulled down her pants, and put his penis in her vagina. During one of the times in her bed, B.S. testified that immediately after vaginal intercourse Mr. Roberts "[went] down there and he just like start[ed] licking it." B.S. testified that she did not have a good relationship with her mother, who was abusive and would hit her. She conceded that she had previously made false allegations of sexual abuse against her biological father ("M.S."), but testified that her mother was mad at her father and told her to do it.

{¶31} Mr. Roberts argues that B.S. "has a history of dishonesty that extends beyond theft and questionable immoral acts." B.S. testified that one time she was at church with some friends and they went to the store next door and stole a few things. S.G., who is the biological mother of B.S. and ex-girlfriend of Mr. Roberts, testified that she had problems with B.S. not wanting to listen, had problems with B.S. at school, and "busted" B.S. sending out pictures of herself with no shirt on to a 16-year-old boy when she was nine years old. S.G. also testified that she contacted the authorities when B.S. told her that M.S. had sexually assaulted her by putting his penis in her mouth. B.S. admitted on cross-examination that she was never sexually assaulted by M.S., but claimed that S.G. told her to make up the sexual abuse allegations because S.G. was mad at M.S. Mr. Roberts argues that "[w]hether she schemed with her mother * * * is irrelevant [because] [s]he proved that she is capable of creating a false story of rape against an innocent person and repeat[ing] the lie to law enforcement without consequences."

{¶32} This Court has consistently held that when conflicting evidence exists, we will not disturb the fact-finder's factual determinations because the fact-finder is in the best position to

determine the credibility of the witnesses during trial. *State v. McPherson*, 9th Dist. Lorain No. 08CA009377, 2009-Ohio-1426, ¶ 39, citing *State v. Danko*, 9th Dist. Medina No. 07CA0070-M, 2008-Ohio-2903, ¶ 36. Regardless of whether B.S. made previous false allegations against M.S. of her own accord or because S.G. coerced her into making the allegations, the trial court chose to believe B.S.' testimony regarding the sexual assaults committed by Mr. Roberts in this case. In reaching its verdict, the fact-finder is "free to believe all, part, or none of the testimony of each witness." *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993).

{¶33} The trial court noted its concern with whether B.S. was 12 or 13 years old during the incidents and stated that due to "too much conflicting evidence" it was not firmly convinced that she was 12 years old at the time of the assaults. But, the court stated: "With regard to the testimony of the two girls about the sexual contact and the sexual conduct, am I firmly convinced that it happened, the answer is yes, I am. There was [sic] insinuations that the girls may have made this up to get back at the defendant, but[] I don't see that at all * * *." While the trial court was presented with some conflicting testimony at trial, it clearly found the State's witnesses to be more credible than Mr. Roberts' witness. The court's concerns regarding B.S.' age were reflected in its verdicts of not guilty of rape, but guilty of unlawful sexual conduct with a minor instead.

{¶34} In reviewing the record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, this Court cannot say that the trial court lost its way and created a manifest miscarriage of justice in finding Mr. Roberts guilty of gross sexual imposition and four counts of unlawful sexual conduct with a minor. "This Court has repeatedly held that the trier of fact is in the best position to determine the credibility of witnesses and evaluate their

testimony accordingly." *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15. The fact-finder "is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30, quoting *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist.1993). Moreover, "[a] conviction is not against the manifest weight because the [fact-finder] chose to credit the State's version of events." *State v. Peasley*, 9th Dist. Summit No. 25062, 2010-Ohio-4333, ¶ 18. Mr. Roberts has not shown how this is an exceptional case where the evidence presented weighs heavily in his favor and against conviction. *See Thompkins*, 78 Ohio St.3d at 387.

{¶35} Mr. Roberts' third assignment of error is overruled.

## ASSIGNMENT OF ERROR FOUR

APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

{¶36} In his fourth assignment of error, Mr. Roberts argues that he received ineffective assistance of counsel because defense counsel (1) failed to seek a continuance, mistrial, and exclusion of expert testimony, (2) failed to file a motion to sever the gross sexual imposition charge, and (3) failed to object to testimony containing improper Evid.R. 404(B) evidence. We disagree.

{¶37} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. "Counsel can provide effective assistance using numerous tactics in any given case, and debatable trial strategies do not constitute ineffective assistance of counsel." *State v. Shirley*, 9th Dist. Summit No. 20569, 2002 Ohio App. LEXIS 4, *20 (Jan. 2, 2002). To prove ineffective assistance of counsel, Mr. Roberts must establish that: (1) his counsel's performance was deficient, and (2) the deficient performance

prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. Prejudice can be shown by proving "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of the syllabus. "[T]he Court need not address both *Strickland* prongs if an appellant fails to prove either one." *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 34.

{¶38} Mr. Roberts argues that it is inconceivable that defense counsel did not request a continuance, mistrial, or *Daubert* hearing once Ms. Belanger testified that hymen tissue can heal over time. Before Ms. Belanger took the stand, defense counsel objected to Ms. Belanger testifying at trial based on alleged violations of Crim.R. 16, but then chose to proceed by cross-examining the witness instead of requesting a continuance of the trial. Although a request for a continuance was an option for defense counsel, he was certainly not required to request one. Counsel admitted that he had been provided Ms. Belanger's report almost one year prior to trial, knew who she was, and chose to cross-examine her instead of requesting a continuance. Counsel's decision to rely on cross-examination can be a legitimate tactical decision. *See State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 66. Even assuming arguendo that defense counsel should have made these requests, Mr. Roberts has not established that he suffered prejudice as a result of counsel's failure to do so or that the result of his trial would have been different. *See State v. Dawson*, 9th Dist. Summit No. 28311, 2017-Ohio-2833, ¶ 28.

{¶39} Mr. Roberts also argues that defense counsel was ineffective for failing to file a motion to sever the gross sexual imposition charge from the remaining charges. However, it is well-settled that an attorney's decisions not to file certain pretrial motions such as motions to

sever are "debatable trial tactics [that] generally do not constitute a deprivation of effective counsel." *State v. Carr*, 9th Dist. Summit No. 26661, 2014-Ohio-806, ¶ 23, quoting *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995). Mr. Roberts has failed to demonstrate deficient performance or prejudice here.

**{¶40}** Mr. Roberts argues that defense counsel was ineffective because he failed to object to E.R.'s testimony regarding an "unindicted rape" and B.S.' testimony regarding "unindicted [gross sexual impositions]" as inadmissible other acts evidence under Evid.R. 404(B). However, it is well-settled that defense counsel's "failure to make objections are 'within the realm of trial tactics' and do not establish ineffective assistance of counsel." *State v. Parker*, 9th Dist. Lorain No. 98CA007158, 2000 Ohio App. LEXIS 724, *23 (Mar. 1, 2000), quoting *State v. McCroskey*, 9th Dist. Wayne No. 96CA0026, 1997 Ohio App. LEXIS 1276, *12 (Apr. 2, 1997). Even assuming arguendo that the complained of testimony was inadmissible other acts evidence under Evid.R. 404(B), Mr. Roberts has not shown how the result of his trial would have been different had the testimony been excluded. *See State v. Kraus*, 6th Dist. Ottawa No. OT-15-034, 2016-Ohio-8003, ¶ 39. "We indulge in the usual presumption that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." *State v. White*, 15 Ohio St.2d 146, 151 (1968). Mr. Roberts has not shown that the trial court relied on anything other than relevant, material, and competent evidence in reaching its verdicts.

**{¶41}** Mr. Roberts' fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR FIVE

THE CUMULATIVE ERRORS DEPRIVED APPELLANT OF A FAIR TRIAL
AS GUARANTEED UNDER THE DUE PROCESS CLAUSES OF THE OHIO
AND UNITED STATES CONSTITUTIONS

**{¶42}** In his fifth assignment of error, Mr. Roberts argues that cumulative effect of the alleged errors in his trial deprived him of his right to a fair trial. We disagree.

**{¶43}** "Under the cumulative error doctrine, a conviction may be reversed when the cumulative effect of errors deprives a defendant of the constitutional right to a fair trial even though none of the errors, in isolation, was prejudicial." *State v. Boone*, 9th Dist. Summit No. 26104, 2013-Ohio-2664, ¶ 38, citing *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. "In the absence of multiple errors, the cumulative error doctrine does not apply." *Boone* at ¶ 38, citing *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 132. As Mr. Roberts has not identified any errors in the trial court's proceedings, his cumulative error argument must fail. *See State v. Price*, 9th Dist. Summit No. 28291, 2017-Ohio-4167, ¶ 21.

**{¶44}** Mr. Roberts' fifth assignment of error is overruled.

### III.

**{¶45}** Mr. Roberts' first, second, third, fourth, and fifth assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, P. J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

CRAIG T. WEINTRAUB, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.